# DEPARTMENT OF THE ARMY LEASE

## FOR AGRICULTURAL OR GRAZING PURPOSES

### LOCATED ON

### LAKE OAHE ROJECT

### MORTON, NORTH DAKOTA

THIS LEASE, made on behalf of the United States, between the **SECRETARY OF THE ARMY**, hereinafter referred to as the Secretary, and **David Meyer, 3285 67th Street, Flasher, North Dakota, 58535-3326;** hereinafter referred to as the Lessee,

**WITNESSETH:**

That the Secretary, by authority of Title 10, United States Code, Section 2667, and for the consideration set forth herein, hereby leases to the Lessee the property hereinafter identified in Exhibit "B", attached hereto and made a part hereof, hereinafter referred to as the premises, for **grazing and haying** purposes, and in accordance with the land use regulations identified in Exhibit "A" which is attached hereto and made a part hereof. Said property, lying above elevation 1617.0' mean sea level and containing **429.0** acres, more or less, is more particularly described as follows:

Tract **3225(pt)** part of E½NE¼SE¼ Sec 33, W½SW¼ Sec 34, T135N, R79W, part of W½ Sec 3, part of Sec 10, part of S½ Sec 9, Part of SE¼ SE¼ SE¼ Sec 8, part of NE¼NE¼ Sec 17, part of N½ Sec 16, part of N½ Sec 15, part of W½W½SW¼ Sec 16 north of river, part of E½SE¼ Sec 17 north of river and east of Hwy 1806, part of SE¼NW¼, S½NE¼ and SW¼ SE¼ Sec 17 west of Hwy 1806, part of N½N½NW¼ Sec 20 and NE¼NE¼, NW¼ SE¼NE¼ SW¼NE¼, NW¼NW¼SE¼, NE¼SW¼, SW¼SE¼NW¼ and W½NW¼ Sec 19 west of Hwy 1806 and north of river, T134N, R79W, all in Morton County, North Dakota.

THIS LEASE is granted subject to the following conditions:

1. **TERM**

Said premises are hereby leased for a term of **four (4) years) nine (9) months,** beginning **April 1, 2014**, and ending **December 31, 2018**, and may be renewed for up to an additional 5 years in accordance with Condition 31, but revocable at will by the Secretary.

2. **CONSIDERATION**

a. As consideration for this lease, the Lessee shall pay cash rental in advance to the United States in the amount of **Four Thousand Eight Hundred Sixty Five and no/100 Dollars ($4,865.00)**, payable annually to the order of the "FAO-USAED, Omaha District" and delivered to USAED, Omaha, ATTN: CENWO-RE-S, 1616 Capitol Avenue, Omaha, Nebraska 68102-4901. The period **April 1, 2014**, through **December 31, 2014** shall be considered as one annual year for rental payment purposes. All subsequent rental payments shall be made on or before 1 January each year thereafter for the remainder of the lease term. Such cash rental has been reduced by the value of work items which shall be accomplished by the Lessee for the maintenance, protection, repair, restoration, and improvement of the leased premises as described in the Land Use Regulations attached as Exhibit "A". The Lessee shall reimburse the United States annually for any work not performed by the Lessee during the previous lease year in accordance with the rental offset requirement included the attached Land Use Regulations. The amount of the reimbursement shall be determined by the United States' appraisal of the fair market value of work and will be in addition to the cash rental due above.



EXHIBIT N

b. All rent and other payments due under the terms of this lease must be paid on or before the date they are due in order to avoid the mandatory sanctions imposed by the Debt Collection Act of 1982, (31 U.S.C. Section 3717). This statute requires the imposition of an interest charge for the late payment of debts owed to the United States; an administrative charge to cover the costs of processing and handling delinquent debts; and the assessment of an additional penalty charge on any portion of a debt that is more than 90 days past due. The provisions of the statute will be implemented as follows:

(1) The United States will impose an interest charge, the amount to be determined by law or regulation, on late payment of rent. Interest will accrue from the due date. An administrative charge to cover the cost of processing and handling each late payment will also be imposed.

(2) In addition to the charges set forth above, the United States will impose a penalty charge of six percent (6%) per annum on any payment or portion thereof, more than ninety (90) days past due. The penalty shall accrue from the date of delinquency and will continue to accrue until the debt is paid in full.

(3) All payments received will be applied first to any accumulated interest, administrative and penalty charges and then to any unpaid rental or other payment balance. Interest will not accrue on any administrative or late payment penalty charge.

3. NOTICES

All correspondence and notices to be given pursuant to this lease shall be addressed, if to the Lessee, to **David Meyer, 3285 67th Street, Flasher, North Dakota 58535-9724** and if to the United States, to the District Commander, Omaha District, Attention: Chief, Real Estate Division, 1616 Capitol Avenue, Omaha, Nebraska 68102-4901, or as may from time to time otherwise be directed by the parties. Notice shall be deemed to have been duly given if and when enclosed in a properly sealed envelope, or wrapper, addressed as aforesaid, and deposited, postage prepaid, in a post office regularly maintained by the United States Postal Service.

4. AUTHORIZED REPRESENTATIVES

Except as otherwise specifically provided, any reference herein to "Secretary", "District Commander", or "said officer", include their duly authorized representatives. Any reference to "Lessee" shall include any sublessees, assignees, transferees, successors and their duly authorized representatives.

5. SUPERVISION BY THE DISTRICT COMMANDER

The use and occupation of the premises shall be subject to the general supervision and approval of the District Commander, Omaha District, hereinafter referred to as said officer, and to such rules and regulations as may be prescribed from time to time by said officer.

6. APPLICABLE LAWS AND REGULATIONS

The Lessee shall comply with all applicable Federal, state, county and municipal laws, ordinances and regulations wherein the premises are located.

7. CONDITION OF PREMISES

The Lessee acknowledges that it has inspected the premises, knows its condition, and understands that the same is leased without any representation or warranties whatsoever and without obligation on the part of the United States to make any alterations, repairs or additions thereto.

2



8. **TRANSFERS AND ASSIGNMENTS**

Without prior written approval of the District Commander, the Lessee shall neither transfer nor assign this lease, nor sublet the premises or any part thereof, nor grant any interest, privilege or license whatsoever in connection with this lease. Failure to comply with this condition shall constitute a noncompliance for which the lease may be revoked immediately by the District Commander.

9. **PROTECTION OF PROPERTY**

The Lessee shall keep the premises in good order and in a clean, safe condition by and at the expense of the Lessee. The Lessee shall be responsible for any damage that may be caused to property of the United States by the activities of the Lessee under this lease, and shall exercise due diligence in the protection of all property located on the premises against fire or damage from any and all other causes. Any property of the United States damaged or destroyed by the Lessee incident to the exercise of the privileges herein granted shall be promptly repaired or replaced by the Lessee to a condition satisfactory to said officer, or at the election of said officer, reimbursement made therefore by the Lessee in an amount necessary to restore or replace the property to a condition satisfactory to said officer.

10. **RENTAL ADJUSTMENT**

In the event the United States revokes this lease or in any other manner materially reduces the leased area or materially affects its use by the Lessee prior to the expiration date, an equitable adjustment will be made in the rental paid or to be paid under this lease. Where the said premises are being used for farming purposes, the Lessee shall have the right to harvest, gather and remove such crops as may have been planted or grown on said premises, or the District Commander may require the Lessee to vacate immediately and, if funds are available, compensation will be made to the Lessee for the value of the remaining crops. Any adjustment of rent or the right to harvest, gather and remove crops shall be evidenced by a written supplemental agreement, executed by the District Commander; PROVIDED, however, that none of the provisions of this paragraph shall apply in the event of revocation because of noncompliance by the Lessee with any of the terms and conditions of this lease, and in that event, any remaining crops shall become property of the United States upon such revocation.

11. **RIGHT TO ENTER AND FLOOD**

The right is reserved to the United States, its officers, agents and employees to enter upon the premises at any time and for any purposes necessary or convenient in connection with government purposes; to make inspections; to remove timber or other materials, except property of the Lessee; to flood the premises; to manipulate the level of the lake or pool in any manner whatsoever, and/or to make any other use of the lands as may be necessary in connection with government purposes, and the Lessee shall have no claims for damages on account thereof against the United States or any officer, agent or employee thereof.

12. **INDEMNITY**

The United States shall not be responsible for damages to property or injuries to persons which may arise from or be incident to the exercise of the privileges herein granted, or for damages to the property of the Lessee, or for damages to the property or injuries to the person of the Lessee's officers, agents or employees or others who may be on the premises at their invitation or the invitation of any one of them, and the Lessee shall hold the United States harmless from any and all such claims not including damages due to the fault or negligence of the United States or its contractors.

### 13. RESTORATION

On or before the expiration of this lease or its termination by the Lessee, the Lessee shall vacate the premises, remove the property of the Lessee and restore the premises to a condition satisfactory to said officer. If, however, this lease is revoked, the Lessee shall vacate the premises, remove said property and restore the premises to the aforesaid condition within such time as the said officer may designate or as otherwise specified by the provisions of the condition on **RENTAL ADJUSTMENT**. In either event, if the Lessee shall fail or neglect to remove said property and restore the premises, then, at the option of said officer, the property shall either become the property of the United States without compensation therefore, or the said officer may cause the property to be removed and no claim for damages against the United States or its officers or agents shall be created by or made on account of such removal and restoration work. The Lessee shall also pay the United States on demand any sum which may be expended by the United States after the expiration, revocation or termination of this lease in restoring the premises.

### 14. NON-DISCRIMINATION

The Lessee shall not discriminate against any person or persons or exclude them from participation in the Lessee's operations, programs or activities conducted on the leased premises, because of race, color, religion, sex, age, handicap or national origin.

### 15. SUBJECT TO EASEMENTS

This lease is subject to all existing easements, or those subsequently granted as well as established access routes for roadways and utilities located, or to be located, on the premises, provided that the proposed grant of any new easement or route will be coordinated with the Lessee, and easements will not be granted which will, in the opinion of the District Commander, interfere with the use of the premises by the Lessee.

### 16. SUBJECT TO MINERAL INTERESTS

This lease is subject to all outstanding mineral interests. As to federally owned mineral interests, it is understood that they may be included in present or future mineral leases issued by the Bureau of Land Management (BLM) which has responsibility for mineral development of Federal lands. The Secretary will provide lease stipulations to BLM for inclusion in said mineral leases that are designed to protect the premises from activities that would interfere with the Lessees operations or would be contrary to local law.

### 17. TERMINATION

This lease may be terminated by the Lessee at any time by giving at least sixty (60) days notice thereof, in writing, to the District Commander. In the case of such termination, no refund by the United States of any rental previously paid shall be made and payment in full of all rent becoming due during the period of notice will be required. In the event the effective date of termination occurs after the start of the grazing, planting or harvesting season as specified in the Land Use Regulations, any rent due for the balance of the annual term, or the rental due for the remaining term if the lease is for less than one year, shall be due and payable on or before the date of such termination.

### 18. PROHIBITED USES

a. Certain soil conservation practices may be required by the land use regulations which are identified as rental offsets. By acceptance of such offsets, the Lessee agrees that he will not accept any Federal or State cost-sharing payments or subsidies for the same soil conservation practices.

b. The Lessee shall not construct or place any structure, improvement or advertising sign or allow or permit such construction or placement without prior written approval of the District Commander.

## 19. PROTECTION OF NATURAL RESOURCES

The Lessee shall use the premises in accordance with the attached Land Use Regulations and shall at all times: (a) maintain the premises in good condition and free from weeds, brush, washes, gullies and other erosion which is detrimental to the value of the premises for agricultural purposes; (b) cut no timber, conduct no mining operations, remove no sand, gravel or kindred substances from the premises; (c) commit no waste of any kind nor in any manner substantially change the contour or condition of the premises except changes required to accomplish soil and water conservation measures as may be authorized by said officer.

## 20. DISPUTES

a. Except as provided in the Contract Disputes Act of 1978 (41 U.S.C. §§ 601-613) (the Act), all disputes arising under or relating to this lease shall be resolved under this clause and the provisions of the Act.

b. "Claim," as used in this clause, means a written demand or written assertion by the Lessee seeking, as a matter of right, the payment of money in a sum certain, the adjustment of interpretation of lease terms, or other relief arising under or relating to this lease. A claim arising under this lease, unlike a claim relating to this lease, is a claim that can be resolved under a lease clause that provides for the relief sought by the Lessee. However, a written demand or written assertion by the Lessee seeking the payment of money exceeding $100,000 is not a claim under the Act until certified as required by subparagraph c.(2) below. The routine request for rental payment that is not in dispute is not a claim under the Act. The request may be converted to a claim under the Act, by this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

c. (1) A claim by the Lessee shall be made in writing and submitted to the District Commander for a written decision. A claim by the Government against the Lessee shall be subject to a written decision by the District Commander.

(2) For Lessee claims exceeding $100,000, the Lessee shall submit with the claim a certification that:

(i) The claim is made in good faith;

(ii) Supporting data are accurate and complete to the best of the Lessee's knowledge and belief; and

(iii) The amount requested accurately reflects the lease adjustment for which the Lessee believes the Government is liable.

(3) (i) If the Lessee is an individual, the certificate shall be executed by that individual.

(ii) If the Lessee is not an individual, the certification shall be executed by:

(A) A senior company official in charge at the Lessee's location involved; or

(B) An officer or general partner of the Lessee having overall responsibility of the conduct of the Lessee's affairs.

d. For Lessee claims of $100,000 or less, the District Commander must, if requested in writing by the Lessee, render a decision within 60 days of the request. For Lessee-certified claims over $100,000, the District

5

Commander must, within 60 days, decide the claim or notify the Lessee of the date by which the decision will be made.

e. The District Commander's decision shall be final unless the Lessee appeals or files a suit as provided in the Act.

f. At the time a claim by the Lessee is submitted to the District Commander or a claim by the Government is presented to the Lessee, the parties, by mutual consent, may agree to use alternative means of dispute resolution. When using alternate dispute resolution procedures, any claim, regardless of amount, shall be accompanied by the certification described in paragraph c.(2) of this clause, and executed in accordance with paragraph c.(3) of this clause.

g. The Government shall pay interest on the amount found due and unpaid by the Government from (1) the date the District Commander received the claim (properly certified if required), or (2) the date payment otherwise would be due, if that date is later, until the date of payment. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury, as provided in the Act, which is applicable to the period during which the District Commander receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim. Rental amounts due to the Government by the Lessee will have interest and penalties as set out in the Condition on **CONSIDERATION.**

h. The Lessee shall proceed diligently with performance of the lease, pending final resolution of any request for relief, claim, appeal, or action arising under the lease, and comply with any decision of the District Commander.

21. **ENVIRONMENTAL PROTECTION**

a. Within the limits of their respective legal powers, the parties to this lease shall protect the premises against pollution of its air, ground and water. The Lessee shall comply with any laws, regulations, conditions or instructions affecting the activity hereby authorized if and when issued by the Environmental Protection Agency, or any Federal, state, interstate or local governmental agency having jurisdiction to abate or prevent pollution. The disposal of any toxic or hazardous materials within the premises is specifically prohibited. Such regulations, conditions or instructions in effect or prescribed by the said Environmental Protection Agency, or any Federal, state, interstate or local governmental agency are hereby made a condition of this lease. The Lessee shall not discharge waste or effluent from the premises in such a manner that the discharge will contaminate streams or other bodies of water or otherwise become a public nuisance.

b. The Lessee will use all reasonable means available to protect the environment and natural resources, and where damage nonetheless occurs arising from activities of the Lessee, the Lessee shall be liable to restore the damaged resources.

c. The Lessee must obtain approval in writing from said officer before any pesticides or herbicides are applied to the premises.

22. **HISTORIC PRESERVATION**

The Lessee shall not remove or disturb, or cause or permit to be removed or disturbed, any historical, archeological, architectural or other cultural artifacts, relics, remains or objects of antiquity. In the event such items are discovered on the premises, the Lessee shall immediately notify said officer and protect the site and the material from further disturbance until said officer gives clearance to proceed.

23. **SOIL AND WATER CONSERVATION**

The Lessee shall maintain, in a manner satisfactory to said officer, all soil and water conservation structures that may be in existence upon the premises at the beginning of or that may be constructed by the Lessee during the term of this lease, and the Lessee shall take appropriate measures to prevent or control soil erosion within the premises. Any soil erosion occurring outside the premises resulting from the activities of the Lessee shall be corrected by the Lessee as directed in writing by the District Commander.

24. **TAXES**

Any and all taxes imposed by the state or its political subdivisions upon the property or interest of the Lessee in the premises shall be promptly paid by the Lessee. If and to the extent that the property owned by the Government is later made taxable by State or local governments under an Act of Congress, the lease shall be renegotiated.

25. **COVENANT AGAINST CONTINGENT FEES**

The Lessee warrants that no person or selling agency has been employed or retained to solicit or secure this lease upon an agreement or understanding for a commission, percentage, brokerage or contingent fees, excepting bona fide employees or established commercial or selling agencies maintained by the Lessee for the purpose of securing business. For breach or violation of this warranty, the United States shall have the right to annul this lease without liability or, in its discretion, to require the Lessee to pay, in addition to the lease rental or consideration, the full amount of such commission, percentage, brokerage or contingent fee.

26. **OFFICIALS NOT TO BENEFIT**

No member of or delegate to congress or resident commissioner shall be admitted to any share or part of this lease or to any benefits to arise there from. However, nothing herein contained shall be construed to extend to any incorporated company if this lease is for the general benefit of such corporation or company.

27. **SEVERAL LESSEES**

If more than one Lessee is named in this lease, the obligations of said Lessees herein named shall be joint and several obligations.

28. **MODIFICATIONS**

This lease contains the entire agreement between the parties hereto, and no modifications of this agreement, or waiver, or consent hereunder shall be valid unless the same be in writing, signed by the parties to be bound or by a duly authorized representative and this provision shall apply to this condition as well as other conditions of this lease.

29. **DISCLAIMER**

This lease is effective only insofar as the rights of the United States in the premises are concerned. The Lessee shall obtain any permit or license which may be required by Federal, state or local statute in connection with the use of the premises. It is understood that the granting of this lease does not preclude the necessity of obtaining a Department of the Army permit for activities which involve the discharge of dredge or fill material or the placement of fixed structures in the waters of the United States, pursuant to the provisions of Section 10 of the Rivers and Harbors Act of 3 March 1899 (33 USC §403), and Section 404 of the Clean Waters Act (33 USC §1344).

LAKE OAHE PROJECT, NORTH DAKOTA
NO. DACW45-1-14-8095

Prior to the execution of this lease, the following site specific Condition Nos. 30 and 31 were added hereto and made a part hereof.

## 30. TRESPASS CHARGES

The lessee agrees that trespass charges shall be assessed for any livestock belonging to the lessee, or under his control, or on the leasehold by his invitation, which remains on the leasehold after the date specified in the lease or which returns to the leasehold prior to the date specified in the lease. The trespass charges are in addition to the annual rental and will consist of prorated rental charges for the additional days plus an administrative charge of $250.00 for each trespass incident. Failure to pay the trespass charges within 30 days following receipt of billing or continued failure on the part of the lessee to comply with the lease provisions will be sufficient grounds for immediate revocation of the lease, and will not relieve the lessee from payment of any monies due and owing the Government.

## 31. RIGHT OF RENEWAL WITHOUT COMPETITION

The United States may renew this lease by mutual agreement with the current lessee if the lease term stated above expressly authorizes renewal, the lessee's performance is satisfactory, and the value as determined by the United States Government is acceptable.

THIS LEASE is not subject to Title 10, United States Code, Section 2662, as amended.

IN WITNESS WHEREOF I have hereunto set my hand by authority of the Secretary of the Army this 8th day of April, 2014.

Rick L. Noel
**Chief, Civil Branch, Real Estate Division**
**Real Estate Contracting Officer**

THIS LEASE is also executed by the Lessee this _____ day of _____, 2014.

DAVID MEYER
PHONE: (701) 597-9724
3326

8

# LAND USE REGULATIONS
# CROPPING, HAYING AND GRAZING
# OAHE PROJECT

The lessee agrees to conduct all farming and ranching operations in accordance with the land use practices set forth in this document.

THE LEASING OF THIS LAND IS AN INTERIM USE ONLY, UNTIL SUCH TIME AS PUBLIC USE OF THE LEASED PROPERTY FOR AUTHORIZED PROJECT PURPOSES REQUIRES REMOVAL OF THE PROPERTY FROM THE LEASING PROGRAM FOR OPERATIONAL, RECREATIONAL, OR FISH AND WILDLIFE MANAGEMENT PURPOSES.

The use of lands covered by this lease are subject to, but not limited to, the following specific restrictions and regulations and in addition must be in compliance with U.S. Department of Agriculture approved practices for this community.

## 1. General Management Practices.

a. <u>Lease Operations.</u>

(1) The lessee agrees to furnish all equipment, material, and labor and to conduct all farming and ranching operations in accordance with the lease, recognized principles of good husbandry, and the land use practices set forth herein. All operations will be accomplished in a timely manner without further notice and at no expense to the United States unless otherwise provided. All operations will be conducted with extreme care to avoid any possibility of boundary or survey monuments, markers, or bench marks being destroyed or disturbed. The lessee will be held responsible for any damages. <u>The lessee must not enter and occupy the subject property prior to receiving a fully executed lease without the prior approval of the Natural Resource Manager, Oahe Project Office, 28563 Powerhouse Road, Pierre, South Dakota 57501, telephone (605) 224-5862. The lessee's management plan and the conditions of leasing must be mutually discussed between the lessee and the Natural Resource Manager prior to approval of initial entry onto the leased lands.</u>

(2) When the purpose of the lease is for grazing, the lessee may use the land lying below the 1617' mean sea level (msl) elevation and adjacent to the leasehold for grazing purposes. All conditions of the lease will apply with regards to use of this land, including fencing the lease boundaries. No grazing will be allowed on this area when tracts are leased for haying or cropping purposes only.

b. <u>Public Access.</u> The lessee will not interfere with nor obstruct vehicular access to and exit from the water areas by the general public on open, public, and reservoir access roads that cross the leased premises without the written permission of the Natural Resource Manager, nor interfere with the placement and use of facilities or structures authorized by the Corps of Engineers. Pedestrian access must be permitted. The leased premises are open to the general public for hunting, fishing, and related recreational activities unless prohibited by the Natural Resource Manager. Posting of the leased premises by the lessee with "No Trespass", "No Hunting", "Private Property" or similar signs is prohibited.

c. <u>Rental Offset Program.</u> An offset is work performed by the lessee for the United States in exchange for reduced cash rental. Examples: leaving a specified amount of crop or hay unharvested or constructing a specified amount of fence. Offsets are considered standard requirements of the lease and must be performed by the lessee. Failure to perform the offset work during the specified time will result in increased rental for the remainder of the term or may be a basis for lease revocation.

d. Fences.

(1) The lessee of unfenced public land must make the necessary arrangements and/or agreements with the owners or lessees of adjacent land regarding access, fencing, and the location of boundary lines. In the event such arrangements and/or agreements are not made, it will be the sole responsibility of the lessee, at his own expense, to establish necessary access roads and boundary lines, and to obtain and erect the required fencing which will be constructed to meet the requirements of State laws and the Corps of Engineers. All such improvements must be approved in writing by the Natural Resource Manager.

(2) All fencing, with the exception of temporary electric type fences that are used in a grazing/rest type usage, must be approved by the Corps of Engineers prior to construction. Fencing required under the offset program becomes the property of the United States upon construction. Fences constructed by the lessee and not under the offset program must be removed within 30 days of lease termination or they will become the property of the United States.

(3) Maintenance of all boundary and interior fences will be the responsibility of the lessee. Existing fences, with the exception of temporary electric type fences that are used in a grazing/rest type usage, shall not be moved, modified, or changed without written permission. The lakeside end of cross fencing must be moved up and down with fluctuating lake levels for safety reasons. Requests to modify any fence, including the installation of gates, must be directed to the Natural Resource Manager.

e. Noxious Weeds and Other Pests.

(1) Lessees will be responsible for control and attempted elimination of noxious weeds on all lands leased to them. A rental offset may be offered for the control of noxious weeds located on lands below the 1617' msl elevation and adjacent to the leased premises where use of this land is authorized by Paragraph 1.a.(2), above. The lessee must comply with all applicable Federal, State, County, and Municipal laws, ordinances, and regulations. Additionally, the lessee must conduct an active program to control or prevent significant infestations of pests such as, but not limited to, rodents, and grasshoppers, at the direction of or with the permission of the Natural Resource Manager.

(2) Permission must be obtained from the Natural Resource Manager prior to the use of any pesticide on the leased area or on lands below 1617' msl elevation. (Note: the term pesticide includes but is not limited to herbicides, insecticides, rodenticides, larvicides, fungicides, etc.) The Natural Resource Manager's permission for the use of Federally registered "restricted use" pesticides must be obtained in writing prior to application. Only chemicals approved for use in aquatic areas will be allowed for use on lands below 1617' msl elevation. No suspended or cancelled use pesticide will be used on the leased area. A list of these chemicals may be obtained from the Natural Resource Manager.

(3) In addition to the above, the lessee must report all pesticide applications on the Lessee's Annual Pesticide Report, by 1 October annually. This report shall be submitted to the Natural Resource Manager and is required even if no chemicals were applied. Pesticides must not be stored on United States' property in excess of five (5) days. All empty pesticide containers must be removed from United States' property within five (5) days of application.

(4) Applicators will be required to be registered in accordance with Federal and State statutes. Applicators will be required to notify the Natural Resource Manager a minimum of two days prior to applying any chemicals to United States' property and submit standardized forms detailing all applications made to the Natural Resource Manager's Office within a week of application.

(5) The United States may pursue noxious weed control on the leased premises or below the 1617' msl elevation without advance notification to the Lessee.

f. Vegetation Modification. Modification of existing vegetation in any manner, to include trees, shrubs, brush, native and tame grasses and riparian vegetation is prohibited unless permitted under the specific terms of this lease or approved in writing by the Natural Resource Manager.

g. Burning. Burning, for any purpose, is prohibited on the leased premises without the prior written approval of the Natural Resource Manager. Such approval may be granted only when burning is justified for sound grazing or wildlife management practices and for drift and crop residue clearing operations where no practical alternative exists. A North Dakota State Burning Permit must be obtained in advance.

h. Dead Stock. The lessee must comply with all applicable Federal, State, County, and Municipal laws, ordinances and regulations (including quarantine laws) regarding dead stock. Additionally, the lessee must immediately dispose of dead stock off United States' lands, eliminate any unsanitary conditions, and prevent the spread of disease.

i. Public Use, Air and Water Pollution. The leasehold must be managed for agricultural purposes in a manner that is consistent with current and future public use and enjoyment and which will preserve and enhance scenic, scientific, aesthetic, historical, biological, and archeological resources. The lessee must not discharge or apply any substance to the leasehold or operate the leasehold in any manner which would cause pollution to the ground water, surface waters, or air to the extent that it would endanger the health of human, animal, or aquatic life. Surveillance of all possible sources of pollution must be coordinated with the State Health Department.

j. Highly Erodible Land Conservation and Wetland Conservation Programs. The Federal Agriculture Improvement and Reform Act of 1996 provides for highly erodible land conservation and wetland conservation. It is the lessee's responsibility to obtain approval of conservation plans for highly erodible cropland, if applicable, and for correction of any existing erosion problems to assure eligibility of US Department of Agriculture benefits. Any required conservation practice may or may not be subject to rental offset in accordance with procedures outlined in Paragraph 1.c., above.

k. Reservation to Plant Trees/Tree Plantings. The Natural Resource Manager reserves the right withdraw lands from the lease to plant trees. Adjustments in rental for lands removed from the lease will be in accordance with the Condition 10 of the lease.

l. Reservation to Fence Woody Draws And Wetlands. The Natural Resource Manager reserves the right to withdraw woody draw and wetland habitat from the lease and fence the draw or wetland perimeter. Grazing will not be permitted within the draw or wetland once fenced. Adjustments in rental for lands removed from the lease will be in accordance with Condition 10 of the lease.

m. Vehicle and Equipment Storage. Storage of vehicles and equipment, including grain storage facilities, on lands of the United States, is prohibited.

n. Cultural Resources. Lessees are required to notify the Natural Resource Manager upon discovery of any cultural resources during their authorized operations. Upon discovery of cultural resources, leases may be modified to implement protective measures. Unauthorized collection and disturbance of cultural resources is a Federal offense and lessees must not give permission to individuals to search for or collect artifacts from lands of the United States.

o. Threatened and Endangered Species. Shoreline areas are potential nesting habitat for Piping Plovers and Least Terns, shorebirds on the Threatened and Endangered Species list. If either or both species are observed, the Corps may fence the nesting site(s) or the lessee may be asked to change grazing dates to prevent disturbance by livestock.

p. <u>Grazing Practices.</u>

(1) There are two approved methods to determine livestock stocking rates, Animal Unit Months (AUM) or utilization of no more than 50% of annual forage production. If the leased tracts are fenced on the boundary, the lessee must use the AUM utilization rate as specified in Paragraph 2, Specific Management Practices. If the leased tracts are not fenced on the boundary, the lessee must use a utilization rate not to exceed 50% of annual forage production. If a leased area is not fenced, a non-grazing enclosure must be constructed on the premises to assist in measuring annual forage production.

(2) The leasehold will be periodically inspected and/or a range condition evaluation may be completed during the grazing season by the Corps of Engineers. If the inspection or evaluation indicates that grazing is adversely impacting the range, grazing may be reduced or terminated for the season. Overgrazing, as determined by the Natural Resource Manager, is not permitted and may be a basis for lease revocation or future removal of lands from the leasing program without advance notice to the lessee or general public.

(3) Stock must be removed during the non-grazing season and the use of the leasehold for feedlots or localized stock feeding operations is prohibited. The construction of pit or trench silos, ensiling of forage, or the placement of feeders or watering tanks on the leasehold is prohibited. The construction of corrals or loading chutes is prohibited. The use of salt, minerals or other supplements shall be permitted on lands of the United States as a management tool to help in the distribution of livestock through a grazing unit. If a lessee fails to remove unused blocks or leaves holding tubs within the leased area after livestock are removed, this privilege shall be revoked.

(4) Grazing crop stubble is permitted only if grazing is an authorized lease purpose and only during the authorized grazing season, as found in Paragraph 2, Specific Management Practices.

(5) The lessee must provide a copy and description of the brand(s) found on livestock that will graze the lease area.

(6) Livestock animal unit (AU) equivalents are as follows:

AU = Animal Unit
AUM = Animal Unit Monthly
1,000 pound Cow/Calf pair = 1.00 AU
Yearling = 0.75 AU
Dry Cow = 0.85 AU
Bull = 1.3 AU
Horse = 1.5 AU
Ewe/Lamb pair = 0.20 AU
Yearling Sheep = 0.12 AU
Ram = 0.25 AU

q. <u>Haying Practices.</u>

(1) Unless otherwise specified under Paragraph 2, Specific Management Practices, all haying will be conducted after 15 July each year. One (1) cutting only will be permitted per year.

(2) Individual hay bales, windrowed hay, broken bales, fodder butts, and windrowed feed must be removed from the field within 7 days of harvest. Shocked feed, hay stacks, and properly piled bales may be temporarily stored on hayland of the leasehold (not in high risk flood areas or where permanent vegetation will be damaged), but must be removed and the residue cleaned up prior to 1 October each year.

(3) A 20-foot buffer of uncut hay must be left along all water and drainage edges, adjacent to all shelterbelts, tree stands and woody draws.

r. Cropping Practices.

(1) Lessees must not expand cropland beyond that existing as of 1 April 1992 unless permitted under the specific terms of this lease or approved in writing by the Natural Resource Manager. Cropland expansion includes breaking grasslands, woodlands, meadows, pastures, prairie or native sod for the purpose of planting row, forage, grain, hay or other crops. Expansion includes extending the perimeter of existing cropland fields. Expanding cropland without authorization will be considered noncompliance and msy be a basis for revocation of the lease.

(2) Lessees must insure that food plots or crops left for wildlife, as required by a rental offset, will not be grazed or utilized in any manner and will be left standing until 1 April of the following spring. The food plot acreage may be a part of the overall cropland acreage or a separate food plot located elsewhere on the leased land. If the food plot is part of the overall cropland acreage, the Natural Resource Manager has the option to choose the location of the crop that will be left standing as a wildlife food plot. A legal description or map of the area to be left as a food plot may be included in the lease. The lessee may be required to plant food plots other than wheat such as barley, oats, corn, sunflowers and sweet clover, or plant a mixture of crops in the same field. The wildlife food plots must be clean and free of weeds.

(3) Fall plowing of crop stubble is prohibited. Summer fallow of cropland areas must be minimized or eliminated but fields in fallow rotation may be black fallowed if the lessee plants vegetation erosion strips, ridges fields or uses other Natural Resources Conservation Service approved means to inhibit wind and water erosion. Continuous cropping is an approved method of using cropland as long as the lessee rotates the types of crops that are planted annually (wheat, barley, oats, corn, sunflowers, sweet clover, etc.). The Natural Resources manager may require the lessee to discontinue continuous cropping or require that specific crops be planted in a specific year.

2.  Specific Management Practices.

    a.  Grazing: See Paragraph 1.p of Land Use Regulations.
    b.  Lands in SE¼ of Section 9, T134N, R79W shall be grazed 1 November through 31 December each lease year. All other grazing lands shall be grazed from 15 July through 30 September only each lease year.
    c.  Haying: See Paragraph 1.q. of Land Use Regulations.
    d.  Haying is permitted on land south of Cantapeta Creek in Section 17, T134N, R79W only.
    e.  Offset: Lessee shall plant and leave standing/unharvested 10.0 acres of corn for a wildlife food plot each lease year.

Lessee's Initials 

