IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

CIVIL NO. 3:23-cv-00142

| | |
|---|---|
| SOPHIA WILANSKY,<br><br>        Plaintiff,<br><br>vs.<br><br>PAUL D. BAKKE, in his personal capacity; THOMAS M. GROSZ, in his personal capacity; MATTHEW J. HANSON, in his personal capacity; MICHAEL W. HINRICHS, in his personal capacity; TRAVIS A. NELSON, in his personal capacity; JOSHUA W. RODE, in his personal capacity; EVAN M. SAVAGEAU, in his personal capacity; TRAVIS M. SKAR, in his personal capacity; GLEN G. TERNES, in his personal capacity; JUSTIN W. WHITE, in his personal capacity; DEREK J. ARNDT, in his personal capacity; KYLE KIRCHMEIER, in his official capacity; and MORTON COUNTY, NORTH DAKOTA,<br><br>        Defendants. | **REPLY MEMORANDUM OF LAW IN SUPPORT OF CITY AND COUNTY DEFENDANTS' MOTION TO DISMISS AND TO STRIKE** |

\*\*\*   \*\*\*   \*\*\*

Defendants Morton County, Kyle Kirchmeier, in his official capacity only, Thomas M. Grosz, Matthew J. Hanson, Glen G. Ternes, and Justin White, all in their personal capacities, (collectively "City and County Defendants") submit this brief in reply to *Plaintiff's Consolidated Opposition to Defendants' Motions to Dismiss the Amended Complaint* (doc. 28), and in support of *City and County Defendants' Motion to Dismiss and to Strike* (doc. 20). City and County Defendants' request dismissal, with prejudice, of Plaintiff Sophia Wilansky's ("Wilansky") claims against all Defendants contained in Wilansky's *First Amended Complaint* (doc. 14) pursuant to

1

Federal Rules of Civil Procedure 12(b)(6). City and County Defendants also move to strike Wilansky's allegations in paragraphs 204 through 216 of her *First Amended Complaint* pertaining to Defendant Kirchmeier's alleged concealment of Defendants' alleged responsibility for Wilansky's injury, and defamation of Wilansky as lacking relevance to any cause of action alleged, being impertinent, and as containing scandalous allegations.

**I.    RESPONSE TO WILANSKY'S ALLEGED FACTS**

As a preliminary matter, City and County Defendants deny the allegation Wilansky's left arm was injured as a result of any explosive device utilized by law enforcement[1]. Also denied is the allegation any law enforcement officer engaged in any wrongful conduct in relation to Wilansky's claims. Regardless, City and County Defendants' arguments presented to the Court assume for purposes of their Rule 12 motion only that the purely factual allegations contained in Wilansky's First Amended Complaint are true, unless contradicted by Wilansky's own sworn testimony or matters for which this Court may take judicial notice[2].

Wilansky's portrayal of events in her brief are in several respects not supported by her pleadings and are contrary to her sworn testimony.

- Wilansky's assertion officers continued to fire at her while she fled is contrary to her deposition testimony as explained in the Principal Brief (doc. 21) at ECF pages 15-16, 35.

---

[1] The original County Defendants' assertion in the Companion Case that law enforcement didn't use explosive munitions against Wilansky was factually accurate in the context in which it was made. Wilansky's only use of force claim against the County Defendants in the Companion Case at that time was in relation to the injury to Wilansky's left arm – an injury for which Defendants deny responsibility. Wilansky's claim concerning the deployment of two stinger ball grenades toward Wilansky by State Defendant Dvorak was only recently added to the Companion Case. Wilansky admits she was not struck by the stinger ball grenades.

[2] Wilansky asserts she has no objection to the Court's consideration of her deposition testimony given in the Companion Case, as well as the Skogen Dash Cam Videos (doc. 24) as part of the record on the pending motions to dismiss. (Doc. 28 at ECF p. 14.)

2

- Wilansky's assertion she "had no opportunity to avoid this attack" is patently false as Wilansky could have chosen not to trespass upon the Backwater Bridge and to place herself in close proximity to the barricade despite having admittedly observed law enforcement apply force against numerous other protesters at this very location only a few hours earlier.

- Wilansky's assertion "the order issued by Defendant Ternes prior to the Attack was not clearly directed at [Wilansky] and [Joachinson], who were not under or behind the truck" (doc. 28 at ECF p. 11) is contrary to Wilansky's sworn testimony and her pleadings. In addition to the orders Wilansky has previously alleged or otherwise admitted were given to her as explained in the Principal Brief (doc. 21) at ECF pages 10-11, 14, 37, Wilansky also admits in her brief the following command was given: "We see you behind the truck and underneath the truck. Get out now. Return to the south side of the bridge. Otherwise, we will use less-lethal munitions." (Doc. 28 at ¶ 3; doc. 24 [Skogen dash cam] at "Nov 21 357 am J Skogen.wmv" at time meter 3:57:51.) Wilansky specifically alleged in the Companion Case at paragraph 131 of the *Second Amended Complaint* that "law enforcement officers <u>ordered them</u> to move away from the burned-out vehicle and <u>accused them</u> of having someone under the truck[]" (underline added), thereby admitting orders were directed at Wilansky and Joachinson. Wilansky's pleading also alleges the metal sheet was propped up against the driver-side front bumper of the burned-out truck (truck was facing west, so the metal sheet was propped against the southwest corner of the truck, on the opposite side from where law enforcement were located). (Doc. 14 at ¶ 141.) Wilansky alleges that almost immediately following the command(s), officer began firing at Wilansky and Joachinson, who were cowering behind the metal shield to avoid getting hit. (*Id*. at ¶¶ 150-62.) Wilansky therefore admits she and Joachinson were behind the truck when orders were given.

- Wilansky's assertion she was "trapped . . . behind the metal tarp", without an "avenue to retreat" is contrary to her deposition testimony and pleadings as discussed at page 16 of the Principal Brief (doc. 21). Wilansky admits there were no law enforcement officers positioned south of the barricade preventing her from proceeding south across the Bridge, and Wilansky admits she did in fact proceed south away from the barricade after being hit with an impact round and "realizing she had no way to avoid getting hit with additional munitions . . . ." (Doc. 14 at ¶¶ 175, 177.) Wilansky also admits that once she began proceeding south away from the barricade, she was not struck with any impact munitions and did not hear or see anything that suggested someone was attempting to shoot something at her. (Wilansky Depo. [doc. 22-1] at p. 134.)

- Wilansky's assertion she was hit with an explosive munition (which allegedly injured her left arm) "while she was actively dispersing" (doc. 28 at ECF p. 21) is also contrary to her testimony and pleadings. Wilansky alleges she was hit with an explosive munition after she stopped proceeding south away from the barricade to pick up a piece of plywood. (Doc. 14 at ¶ 189.) Wilansky testified the explosion occurred as she reached down with her right hand towards the pile intending to pick up a piece of plywood to provide some protection against being shot and was facing roughly east or southeast when the explosion occurred. (Wilansky Depo. [doc. 22-1] at pp. 129-37.) Wilansky was no longer in the act of dispersing or fleeing when the subject explosion allegedly occurred. Wilansky's pleadings and testimony establish she was never actually struck with any munition while she was actively fleeing or dispersing, and instead all of her actions of proceeding away from the barricade followed the alleged application of force by officers – objectively manifesting an intent to disperse or repel in the use of force.

- Wilansky's assertion the burned-out truck was not a part of law enforcements' barricade and was instead simply positioned in front of the barricade is false and contrary to Wilansky's testimony. Wilansky testified that at the scene, she observed law enforcements' barricade with razor wire and had been told by someone that the burned-out truck was chained to the barricade, and she observed chains under the truck. (Wilansky Depo. [doc. 22-1] at pp. 77-78.) Wilansky was aware that protesters had the previous day removed one of the two burned-out trucks from the barrier, and had attempted to move the remaining burned-out truck. (*Id*. at pp. 79-81.) Wilansky expressly alleged in the Companion Case that "[l]aw enforcement officers prevented these water protectors from towing away the second burned-out vehicle." (Companion Case at *Second Amended Complaint* [doc. 259] at ¶¶ 98-99.)

- The dash cam video of now retired NDHP Capt. Jody Skogen (doc. 24), which Wilansky consents to being considered in relation to the pending Rule 12 motions, indisputably evidences Wilansky and Joachinson had sufficient time to comply with the admitted commands by Defendant Ternes prior to the deployment of less lethal munitions at or near them. Defendant Ternes' admitted commands ("We see you behind the truck and underneath the truck. Get out now. Return to the south side of the bridge. Otherwise, we will use less-lethal munitions.") are depicted as amplified and clear between time stamps 3:57:51 am to 3:58:03 am. (Doc. 24 at "Nov 21 357 am J Skogen.wmv"). There is continuous video and audio thereafter from 3:58:04 to 3:59:20, a period of one minute and 17 seconds, during which no loud bangs or explosions are heard. The video and audio conclusively establish no shots were fired for at least a period of one minute and 17 seconds after the commands were given – more than enough time for Wilansky and Joachinson to comply with commands before force was applied. Contrary to Wilansky's assertion

in footnote 5, no matter how loud you turn up the volume, no verbal response to the orders or popping sounds can be heard.

## II. ARGUMENT

### A. **Fed. R. Civ. P. 12(f) Motion to Strike**

Wilansky's only response to the motion to strike is contained in paragraph C of the Facts section of her brief. (Doc. 28 at ECF p. 16.) Wilansky argues her allegations of concealment through alleged lying to the media and falsely accusing her of injuring herself in paragraphs 204 through 26 of Wilansky's *First Amended Complaint* "are directly relevant because Defendant Kirchmeier's knowingly false statements are evidence that he knew the use of explosive munitions against Sophia was excessive and illegal. If he believed this use of force was appropriate, he would have admitted to it. These allegations are therefore evidence of culpability." (*Id*.) Wilansky's argument is a non sequitur and is without merit. It does not follow that a denial of the allegation that Wilansky's left arm injury was caused by an explosive device utilized by law enforcement means the opposite of what he asserted, or that any such alleged but denied use of force was excessive or illegal. Wilansky's allegations at issue are scandalous and immaterial as having no relevance to any claim in this action, and essentially seek to revive Wilansky's defamation claims previously dismissed in the Companion Case.

### B. **Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

#### 1. **Wilansky's Fourth Amendment Claim**

##### a. WILANSKY HAS NOT ALLEGED SHE WAS "SEIZED"

Wilansky does not address City and County Defendants' argument there was no seizure through acquisition of control, whether through a show of authority complied with, or through termination of freedom of movement (neither of which applies where force has been applied to the

body). Wilansky ignores the distinction between seizures through use of force and seizures through acquisition of control as explained in City and County Defendants' Principal Brief by jumbling everything together. As Wilansky does not argue she actually complied with any show of authority by officers (which her allegations establish she did not), and as Wilansky does not argue she was seized as a result of anything other than the alleged application of force to her body by officers, Wilansky effectively only argues a seizure through force. As explained in the Principal Brief, and below such argument is without merit.

On November 3, 2023, after City and County Defendants' filed their pending Rule 12 motion to dismiss in this case, the United States Court of Appeals upheld this Court's summary judgment dismissal of all claims against law enforcement officers in the related case of *Dundon v. Kirchmeier*, 85 F.4th 1250 (8th Cir. 2023). In *Dundon*, plaintiff DAPL protesters alleged officers utilized excessive force against them at the Backwater Bridge on November 20, 2016 in violation of their rights under the Fourth and Fourteenth Amendments, and alleged related *Monell* claims. The appellate court agreed with this Court that it was not clearly established as of November 20, 2016 (at the time of the events at issue in the present case as well) that the use of force designed to disperse a crowd violated a constitutional right under the Fourth Amendment, and as a result officers were entitled to qualified immunity. *Id*. at 1255-56. The appellate court rejected the plaintiff protesters' assertion they were seized under the Fourth Amendment under *Torres v. Madrid*, 141 S. Ct. 898 (2021) because officers used force to restrain their "freedom of movement" because the force "knocked most of the Appellants and many of the other assembled persons off their feet or otherwise restricted their freedom of movement by stopping them in their tracks." *Id*. at 1256. In reaching this conclusion, the appellate court discussed and relied upon *Quraishi v. St. Charles County*, 986 F.3d 831, 839-40 (8th Cir. 2021) (officers were entitled to qualified immunity

as the law was not sufficiently clear as of August of 2014 that the use of tear gas by police to disperse news reporters from the site of public unrest and protests constituted a seizure under Fourth Amendment) and *Martinez v Sasse*, 37 F.4th 506, 510 (8th Cir. 2022) (officers were entitled to qualified immunity as the law was not sufficiently clear as of June of 2018 that an officer's pushing an attorney to the ground to prevent the attorney from entering an ICE facility constituted a seizure under the Fourth Amendment). The appellate court also held municipalities (including Morton County) and law enforcement chiefs (including Sheriff Kirchmeier) were not subject to *Monell* liability given the lack of a clearly established right (discussed in Section III(7) below).

Applying the law expressed in *Dundon* to the present case establishes Wilansky's Fourth Amendment and related *Monell* claims fail to allege a violation of a clearly established constitutional right under the Fourth Amendment. As explained in the Principal Brief (doc. 21 at pp. 26-36), the force allegedly applied against Wilansky objectively manifested an intent to repel or disperse Wilansky rather than to restrain her. Whether the explosive munition allegedly deployed by non-party Moll (denied) stopped Wilansky in her tracks, or whether any alleged use of force restricted her "freedom of movement" is not dispositive of the preliminary question of seizure by force. While the question of seizure in *Dundon* and *Quraishi* was addressed in the crowd control context, the Eighth Circuit appellate court came to the same conclusion in the context of a targeted use of force against an individual in *Martinez* (pushing attorney to the ground). The same logic applies to this case. The law was simply not clearly established as of November 21, 2016 that the use of force to repel or disperse rather than to restrain constituted a seizure under the Fourth Amendment, thereby entitling individual Defendants to qualified immunity. In addition, as explained in *Dundon*, neither a municipality nor law enforcement chief can be held liable under § 1983 absent the violation of a <u>clearly established</u> constitutional right.

This Court's prior determination in the Companion Case on October 29, 2020 that:

> The Court finds based on the allegations outlined in Wilansky's Complaint, she has alleged Defendant Officer [Moll] may have seized her. Her facts support a plausible finding Defendant Officer [Moll] intended to control her physical movement, and he succeeded in doing so when he terminated her freedom of movement by intentionally throwing an explosive less-lethal munition at her.

(Companion Case [doc. 46] at 47) was made prior to the United States Supreme Court's decision in *Torres* (2021), prior to the Eighth Circuit appellate court decisions in *Quraishi* (2021) and *Martinez* (2022), prior to the United States District Court for the District of Columbia decision in *Black Lives Matter v. Trump*, 544 F.Supp.3d 15 (D.C. 2021) (officers entitled to qualified immunity as law was not clearly established as of June 1, 2020 that use of rubber bullets, flash-bang grenades, tear gas, batons and smoke to disperse a crowd constituted a seizure under the Fourth Amendment) and prior to this Court's summary judgment decision in *Dundon* (2021) and the appellate court's affirmance thereof (2023), all of which addressed the issue now before this Court of whether force which objectively manifests an intent to disperse or repel rather than to restrain constitutes a seizure under the Fourth Amendment. These cases, with the exception of *Torres* (attempt to execute arrest warrant by striking fleeing suspect with a bullet objectively manifested intent to restrain – factually distinguishable from the present case), provide examples of the intentional use of force which restricted "freedom of movement" and yet did not objectively manifest an intent to restrain under the Fourth Amendment – cases not available to the Court when it previously made such determination in the Companion Case. In fact, this Court's prior determination in the Companion Case relied upon *Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) in analyzing the seizure question. (Companion Case doc. 46 at 46.) This Court subsequently, in entering its summary judgment dismissal order in *Dundon*, distinguished *Nelson* and other cases on the seizure issue noting those cases involved situations where protesters

essentially had no egress and were kettled, i.e. were restrained. *Dundon v. Kirchmeier*, 577 F.Supp.3d 1007, 1039 (D.N.D. 2021). In addition, the United States Court of Appeals for the Eight Circuit in *Dundon* discussed the Ninth Circuit decision in *Nelson* and noted *Nelson* was decided prior to the Eighth Circuit decisions in *Quraishi* and *Martinez* and that "[o]ne decision from another court of appeals falls short of a 'robust consensus of authority' clearly establishing that the use of force to disperse is a seizure under the Fourth Amendment." *Dundon*, 85 F.4th at 1256. City and County Defendants request the Court reconsider its prior determination in light of these recent decisions.

      b.    <u>ALLEGED FORCE APPLIED WAS OBJECTIVELY REASONABLE, AND DID NOT VIOLATE WILANSKY'S FOURTH AMENDMENT RIGHTS</u>

Wilansky does not address City and County Defendants' argument that any alleged use of force which did not actually injure her could not constitute excessive force as a matter of law. Wilansky therefore concedes that is the case. Wilansky does not allege she sustained any injuries as a result of any alleged conduct by Defendants Bakke, Grosz, Hanson, Hinrichs, Nelson, Rode, Savageau, Skar, Ternes, or White and her Fourth Amendment claims against them should be dismissed. Wilansky also does not allege any Defendant applied physical force to her body other than Arndt (one impact round) and non-party Moll (alleged aerial warning/signaling munition). Wilansky does not allege Dvorak's deployment of two stinger ball grenades actually touched her – the stinger ball grenades landed and exploded within a few feet of Wilansky (doc. 14 at ¶ 137). Such alleged munition deployments did not actually touch and injure her and could not constitute excessive force as a matter of law.

    **3.**    **Wilansky's Fourteenth Amendment Claim**

The United States Court of Appeals for the Eighth Circuit has stated that "[o]nly a purpose to cause harm *unrelated to the legitimate object of* the government action in question will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Troung v. Hassan*, 829 F.3d 627, 631 (8th Cir. 2016) (Fourteenth Amendment substantive due process claim against a bus driver failed, in part, because the bus driver's action of throwing the plaintiff passenger off a bus for failing to pay a fee were related to his legitimate responsibilities of driving the bus, and therefore not inspired by malice or sadism) (emphasis in original). *See also Helseth v. Burch*, 258 F.3d 867, 870 (8th Cir. 2001) (holding "only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking the conscience, necessary for a due process violation."). Wilansky fails to address this law. It cannot reasonably be disputed that the individual Defendants' alleged conduct at issue related to their employment responsibilities as law enforcement officers. Wilansky's Fourteenth Amendment claim fails as a matter of law.

### 4. Wilansky's Failure To Intervene Claim

As Wilansky has failed to allege a plausible claim of excessive force as explained above, her derivative failure to intervene claim should be dismissed. In addition, Wilansky fails to address City and County Defendants' argument Wilansky has not alleged facts to establish any individual Defendant was aware Moll allegedly possessed any such explosive munition (which is denied), or that they had both the opportunity and means to prevent such alleged one-time use of force. Similarly, Wilansky's failure to intervene claims pertaining to non-party Dvorak's alleged deployment of two stinger ball grenades fails to allege any individual Defendant was aware Dvorak allegedly possessed such munitions, or that they had both the opportunity and means to prevent such alleged use of force. All failure to intervene claims pertaining to the

alleged use of explosive munitions by non-parties Moll and Dvorak should be dismissed.

        **5.**       **Wilansky's Conspiracy Claim**

Wilansky does not reference her conspiracy claim in her brief or otherwise address City and County Defendants' arguments for dismissal thereof. Wilansky has therefore abandoned this claim warranting its dismissal.

        **6.**       **Individual Defendants Are Entitled To Qualified Immunity**

As discussed in Section II(B)(1)(a) above, the United States Court of Appeals for the Eighth Circuit recently held in *Dundon* that it was not clearly established as of November 20, 2016 that officers' application of less lethal force for the objectively manifested intent to disperse a crowd constituted a seizure under the Fourth Amendment, thereby entitling individual defendants in *Dundon* to qualified immunity from suit. The same logic applies to the nearly identical situation in this case where officers are again alleged to have applied force from behind the same barricaded position only a few hours later from the events in *Dundon*, with no attempt to cross south of the barricade to apprehend anyone. In addition, as explained in *Kelsay v. Ernst*, 933 F.3d 975, 981 (8th Cir. 2019), in analyzing qualified immunity, the relevant question is not whether the claimant complied with officer commands as a factual matter, but whether a reasonable officer could have believed the claimant was not compliant. *Id*. (en banc decision determining officer was entitled to qualified immunity for utilizing take down maneuver to arrest a suspect who ignored officer's instruction to "get back here" and continued to walk away from officer, despite suspect being a nonviolent misdemeanant who posed no threat to officers, was not actively resisting arrest or attempting to flee because officer could have reasonably believed it was important to control the situation. *Id.* at 980-81. "Whether the officer's conclusion was reasonable, or whether he was

'reasonably unreasonable' for purposes of qualified immunity are questions of law, not fact. They are matters for the resolution by the court, not by a jury." *Id*. at 981 (citation omitted).

      **7.**      **<u>Wilansky Does Not Allege A Plausible *Monell* Claim Against Morton County</u>**

As Wilansky has failed to allege a violation of her constitutional rights for the reasons discussed above and in the Principal Brief, Wilansky's derivative *Monell* claim fails as a matter of law. In addition, Wilansky's *Monell* claim is foreclosed by the appellate court's recent decision in *Dundon* affirming this Court's summary judgment dismissal of all claims against all defendants therein, including Morton County and Sheriff Kirchmeier. As discussed in Section III(B)(1)(a) above, the United States Court of Appeals for the Eighth Circuit held in *Dundon*, in relevant part, that the plaintiff protesters' *Monell* claims against Morton County and Sheriff Kirchmeier were properly dismissed because: (1) the official policy of leaving the decision of whether and how to use force to the individual officer's discretion is not an unconstitutional policy; and (2) neither a municipality nor supervisor may be liable under § 1983 for the conduct of officers absent the violation of a <u>clearly established constitutional right</u>. *Dundon v. Kirchmeier*, 85 F.4th at 1258 (underline added). As discussed above, even assuming, arguendo, Wilansky has alleged a plausible violation of her constitutional rights by any individual Defendant (which is denied), any such constitutional right was not clearly established as of November 21, 2016. The appellate court in *Dundon* expressly held that officers who deployed less lethal munitions at the Backwater Bridge did not violate a "clearly established right under the Fourth Amendment because it was not clearly established as of November 2016 that use of force to disperse the crowd was a seizure." *Id.* at 1257. Wilansky has failed to allege a violation of a clearly established constitutional right by any Defendant, and her derivative *Monell* claim should be dismissed on this basis.

Wilansky's reliance upon *Mitchell v. Kirchmeier*, 28 F.4th 888 (8th Cir. 2022) is misplaced. In *Mitchell*, the application of force was pursuant to an arrest (i.e. a seizure occurring south of the barricade in 2017). As a result, the issue of whether force used to disperse or repel constitutes a seizure and violation of a clearly established right was not addressed in *Mitchell*.

### 8. This Court Must Follow Long-Established Precedent Applying Qualified Immunity

Wilansky requests this Court to reject the qualified immunity defense, contrary to well-established precedent applying the qualified immunity defense. *See e.g. Pierson v. Ray*, 386 U.S. 547, 555 (1967) (United State Supreme Court's first application of qualified immunity defense; stating "[a] policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does."); *Nance v. Sammis*, 586 F.3d 604, 609 (8th Cir. 2009) ("Qualified immunity protects government officials from liability under § 1983 when their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known." (quotation marks and citation omitted)). The United States Supreme Court has cautioned that "if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (citation omitted). *See also United States v. Smith*, 460 F. Supp. 3d 783, 792 (E.D. Ark. 2020) ("The District Court's role here is to faithfully apply [circuit precedent] "unless and until" it is "reversed by the Supreme Court," overruled by the Eighth Circuit sitting en banc, or becomes clearly irreconcilable with post-[circuit precedent] Supreme Court precedent.") Wilansky's challenge to the qualified immunity defense is foreclosed and must be denied by this Court.

Dated this 12th day of January, 2024.

BAKKE GRINOLDS WIEDERHOLT

By: */s/Shawn A. Grinolds*
Randall J. Bakke (#03898)
Shawn A. Grinolds (#05407)
Special Assistant State's Attorneys for Morton County
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
(701) 751-8188
rbakke@bgwattorneys.com
sgrinolds@bgwattorneys.com

Attorneys for Defendants Morton County, Kyle Kirchmeier, Thomas Grosz, Matthew Hanson, Glen Ternes, Justin White

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2024, a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF CITY AND COUNTY DEFENDANTS' MOTION TO DISMISS AND TO STRIKE** was filed electronically with the Clerk of Court through ECF.

Benjamin M. Stoll
Carlton Fields
1025 Thomas Jefferson Street NW
Suite 400 West
Washington, DC 20007-5208
(202) 965-8160
bstoll@carltonfields.com

Edward C. Barnidge
Williams & Connolly LLP
680 Main Avenue Southwest
Washington, DC 20024
ebarnidge@wc.com

Lauren C. Regan
Civil Liberties Defense Center
1430 Willamette St. #359
Eugene, OR 97401
lregan@cldc.org

Courtney R. Titus
Assistant Attorney General
Office of Attorney General
500 North 9th Street
Bismarck, ND  58501-4509
(701) 328-3640
ctitus@nd.gov

Jane G. Sportiello
Assistant Attorney General
Office of Attorney General
500 North 9th Street
Bismarck, ND  58501-4509
(701) 328-3640
jsportiello@nd.gov

                                  By:    */s/ Shawn A. Grinolds*
                                          SHAWN A. GRINOLDS